UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-06570-AH-(PDx) | Date | September 28, 2026 |
| Title | *Guy Patch v. National Oilwell Varco, L.P. et al.* | | |

| | |
|---|---|
| Present: The Honorable | Anne Hwang, United States District Judge |

| | |
|---|---|
| Yolanda Skipper | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER DENYING MOTION TO COMPEL ARBITRATION (DKT. NO. 10)**

Before the Court is a Motion to Compel Arbitration filed by Defendants National Oilwell Varco, L.P. ("NOV") and Mike Pensinger ("Pensinger") (collectively, "Defendants"). Mot., Dkt. No. 10. Plaintiff Guy Patch ("Plaintiff") filed an Opposition. Opp'n, Dkt. No. 11. Defendants filed a Reply. Reply, Dkt. No. 15. The Court has considered the parties' papers and the relevant law. This matter is fully briefed, and the Court heard oral argument on September 23, 2026. For the following reasons, the Court **DENIES** Defendants' Motion to Compel Arbitration.[1]

[1] As a preliminary matter, Plaintiff argues that Defendants' Motion should be denied on procedural grounds—namely, that the notice of motion served on Plaintiff did not include the correct hearing date, and that Defendants' motion failed to include the meet and confer certification required by the Court's Standing Order. Opp'n at 3. The Court admonishes Defendants for their failure to comply with all applicable rules and the Court's Standing Order. The purpose of the meet-and-confer requirement is not simply to determine whether the dispute can be resolved without the Court's intervention, as Defendants argue, but also to limit the number of disputes to be resolved by the Court and to present responsive briefing,

## I. BACKGROUND

NOV is a multinational oilfield services and equipment company. First Amended Complaint ("FAC") ¶ 8, Dkt. No. 10-5. Pensinger is an Area Manager for NOV. *Id.* ¶¶ 3, 10. Plaintiff was hired by NOV as a Service Technician B on or about July 14, 2025, and resigned on February 10, 2026. *Id.* ¶ 10.

On April 13, 2026, Plaintiff filed a class action complaint against Defendants in Los Angeles Superior Court alleging asserting nine claims against Defendants: (1) Failure to Pay State Minimum Wage; (2) Failure to Pay Overtime Compensation; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Furnish Timely and Accurate Wage Statements; (6) Failure to Provide Paid Sick Leave Notice; (7) Failure to Indemnify for All Necessary Expenditures and Losses; (8) Waiting Time Penalties; and (9) Unfair Competition. *See* Dkt. No. 1. On June 6, 2026, Plaintiff filed a First Amended Complaint ("FAC"), adding a claim under the California Private Attorney General Act ("PAGA"). *See generally* FAC.

On July 16, 2025, Plaintiff signed the final page of a document titled "Employee Dispute Resolution Program" (the "Program"). *See* Armstrong Decl., Ex. A, Dkt. 10-2. Plaintiff was provided at least the signature page by a manager during Plaintiff's third day of training. Opp'n at 2. The parties dispute whether Plaintiff received the entirety of the document when he signed the signature page.

The Program states:

> This mutual agreement to submit resolution of employment-related legal disputes to arbitration under the EDR Program means that both you and NOV are bound to use the Agreement as the only means of resolving certain employment-related legal disputes and to forego any rights either party may have to a jury trial, or any court trial, on issues covered by the Agreement.

Armstrong Decl., Ex. A at 2.

---

which is why the rules require the parties to discuss the motion thoroughly. Nonetheless, the Court finds that this matter is appropriate for resolution on the merits.

The Program further states:

> All claims against the Company must be brought in your individual capacity and not as a claimant or class member in any purported class action, collective action, or representative action proceeding.

*Id.* at 4.

The Program also states:

> All employment-related claims involving legally protected rights against NOV and its owners, parents, subsidiaries, affiliates, supervisors, managers, employees, agents, representatives, officers, insurers, and directors (collectively referred to as "the Company") (with the limited exceptions stated below) must be submitted to arbitration for final and binding resolution including, but not limited to, claims for: unpaid wages or commissions; workplace discrimination or harassment on the basis of race, color, sex (including pregnancy), sexual orientation, age, national origin, religion, disability, failure to accommodate, veteran status or any other basis made unlawful by local, state or federal law; breach of contract; unlawful retaliation; wrongful discharge; defamation; negligence; and employment-related tort claims brought under federal, state, or local law. Binding arbitration shall be the sole and exclusive remedy for the resolution of all such claims.

*Id.*

## II. LEGAL STANDARD

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the court answers both questions in the affirmative, it must 'enforce the

arbitration agreement in accordance with its terms.'" *Johnson v. Walmart Inc.*, 57 F.4th 677, 680-81 (9th Cir. 2023) (quoting *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020)).

"To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). Courts "must hold a party to its arbitration contract just as the court would to any other kind" and "may not devise novel rules to favor arbitration over litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). "A court may invalidate an arbitration agreement based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022) (internal quotations omitted). The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *See Johnson*, 57 F.4th at 681.

## III. DISCUSSION

The parties do not dispute that an agreement to arbitrate exists,[2] that Plaintiff signed the signature page of the Program, or that the Program encompasses the dispute. The parties also do not dispute that the FAA governs this agreement. Rather, Plaintiff challenges the enforceability of the Program, arguing that it is unconscionable. Both parties apply California law to the question of unconscionability.

### A. Unconscionability

In California, "[a] contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520, 529 (Cal. 2024) (internal quotation omitted). "Unconscionability has both a procedural and a substantive element." *Id.* "The procedural element concerns the circumstances of contract negotiation and

---

[2] To the extent Plaintiff raises any dispute about the existence of an agreement, he does so in his arguments regarding procedural unconscionability, which the Court addresses below.

formation, particularly oppression or surprise due to unequal bargaining power." *Fuentes v. Empire Nissan, Inc.*, 582 P.3d 961, 967 (Cal. 2026) (internal quotation omitted). The substantive element, by contrast, concerns "the fairness of an agreement's actual terms, i.e., whether those terms are overly harsh or one-sided." *Id.* (internal quotation omitted). "The party resisting enforcement of an arbitration agreement has the burden to establish unconscionability." *Ramirez*, 551 P.3d at 530.

"Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree." *Id.* "Courts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (alteration in original) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)). "[W]hether a contract is fair or works unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware." *Id.* (alteration in original) (quoting *Yeng Sue Chow v. Levi Strauss & Co.*, 122 Cal. Rptr. 816, 822 (Ct. App. 1975)).

### 1. <u>Procedural Unconscionability</u>

Under California law, "[a]n adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a take-it-or-leave-it basis." *OTO, L.L.C v. Kho*, 447 P.3d 680, 690 (Cal. 2019) (internal quotation omitted). "It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." *Serpa v. Cal. Surety Investigations, Inc.,* 155 Cal. Rptr. 3d 506, 512 (Ct. App. 2013). "[T]he adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability." *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 751 (Cal. 2015). An arbitration agreement being one of "adhesion alone generally indicates only a low degree of procedural unconscionability." *Ramirez*, 551 P.3d at 531. To establish more than a low degree of procedural unconscionability, courts look to two factors: oppression and surprise. *OTO*, 447 P.3d at 690-91.

Plaintiff argues, and Defendants concede, that the Program is an adhesive contract, Mot. at 15, which, as discussed, indicates a low degree of procedural unconscionability by itself. *Ramirez*, 551 P.3d at 531.[3]

*i. Formation Questions*

At the outset, the Court addresses the parties' arguments relating to "the circumstances of contract negotiation and formation." *Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012).

"Every contract requires mutual assent or consent, and ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 107 Cal. Rptr. 2d 645, 651 (Ct. App. 2001) (citation omitted); *see also Pinto v. Walt Disney Parks and Resorts U.S., Inc.*, 528 Fed. App'x 694, 697 (9th Cir. June 7, 2013) ("While some Appellants claim they did not receive the full vanpool agreement at signing, they fail to provide evidence that Disneyland misled or deceived them into signing the agreement. Appellants should have learned the terms of the vanpool agreement before (or after) signing the agreement, or should not have signed the agreement in the first place."). An exception to this rule arises when the writing "does not appear to be a contract" and the "terms are not called to the attention of the recipient." *Marin*, 107 Cal. Rptr. 2d at 651.

Plaintiff asserts that he was provided only the Program's signature page, not the other pages of the Program, during his training.[4] *See* Patch Decl., Dkt. No. 11-

[3] Underscoring the take-it-or-leave-it nature of the agreement, the Program contains bolded and underlined language that: "This EDR Program and Arbitration Agreement shall apply whether or not you sign this document." As Defendants note, this clause ensures the arbitration obligation applies to all employees as a condition of employment. Reply at 5. It does not, as Plaintiff argues, "operate[] without regard to the reader's decision" significantly more than any other adhesive contract in the employment context, as the reader must first accept employment with NOV in order for the Program to apply. Opp'n at 9.

[4] The signature page has a header with NOV's logo, the words "Employee Dispute Resolution Program," and the words "Page 11 of 11," and the body includes the

1, ¶ 19.[5] Defendants dispute this, claiming that Plaintiff received the entire binder of NOV's policies and procedures, including the entire Program. Graham[6] Decl., Dkt. No. 15-1, ¶ 2.[7] Additionally, although Plaintiff asserts in a declaration that "[w]hen [he] asked [Graham] what the document was for, [Graham] simply replied, 'This is so you can never sue us,'" Patch Decl. ¶ 18, Graham asserts in a declaration that he does not recall Plaintiff asking him any questions, Graham Decl. ¶ 2.

The Court finds that these conflicting declarations present factual disputes regarding formation of the agreement. However, such disputes are not material to resolution of this Motion in light of the Court's finding regarding the degree of procedural and substantive unconscionability, discussed below.

*ii. Oppression*

"Oppression occurs where a contract involves lack of negotiation and meaningful choice." *Pinnacle, LLC*, 282 P.3d at 1232 (quoting *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 805 (Ct. App. 2005)). "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *OTO*, 447 P.3d at 690-91 (internal quotation omitted).

---

words "Agreed and Accepted by:" with fields for "EMPLOYEE," "DATE," "PRINT NAME," and "TITLE." *See* Armstrong Decl., Ex. A at 12.

[5] This assertion also forms the basis for Plaintiff's argument that surprise is established. *See* Opp'n at 8.

[6] Willie Graham is the manager who provided Plaintiff the documents.

[7] Defendants also appear to contend that the signature page includes a detailed acknowledgment in capital letters stating: "I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ OR HAVE HAD THE OPPORTUNITY TO READ THIS AGREEMENT." Opp'n at 3. However, it appears that such acknowledgement only appears on page 5 of the Program, not the signature page. *See* Armstrong Decl., Ex. A at 6, 12.

Plaintiff argues that the Program was oppressive because he allegedly had "seconds" to look at the signature page before signing it. *See* Patch Decl. ¶¶ 23-24. In response, Graham asserts that Plaintiff was not provided a specific timeline on which he must sign the paperwork. *See* Graham Decl. ¶ 2. This fact might ordinarily counsel against a finding of significant oppression. *Cf. Fuentes*, 582 P.3d at 968 (finding significant oppression where applicant "was told she should hurry" and given "only five minutes to complete the packet"). However, Defendants do not appear to contest that Graham "walked in[to a training room while Plaintiff was watching a training video] with a document," and after providing paperwork, Plaintiff "paused the video . . . and signed it while Mr. Graham stood over him and waited for it." Opp'n at 6 (citing Patch Decl. ¶¶ 14-15, 20, 22-23).

In *OTO*, the defendant company's representative presented the plaintiff with documents that included the arbitration agreement, and the California Supreme Court observed that "[b]y having the porter wait for the documents, One Toyota conveyed an expectation that Kho sign them immediately, without examination or consultation with counsel," 447 P.3d at 691, which also "made it extremely difficult for the employee to consult an attorney," *Alvarez v. Altamed Health Servs. Corp.*, 274 Cal. Rptr. 3d 802, 817 (Ct. App. 2021), *as modified* (Mar. 4, 2021) (distinguishing *OTO* and finding limited procedural unconscionability due to oppression where the agreement was mailed to the employee and specified that she had a day or more to respond). As in *OTO*, Graham's waiting for Plaintiff's signature, and Graham's failure to provide Plaintiff a copy of the signed document, results in a moderate level of oppression. *See OTO*, 447 P.3d at 691-92; Patch Decl. ¶ 36.

Plaintiff next argues that the binder Plaintiff allegedly received contained at least fifteen documents, and the Program itself runs eleven single-spaced pages in approximately 10-point type, with two attachments and cross-references to a set of JAMS rules that was not attached. However, as Defendants note, the Program was a separately executed document, and as discussed below with respect to surprise, the Program is not an overly lengthy or complicated document.[8]

---

[8] Plaintiff argues that the Program "implements a process whereby mediation may be used and, if necessary, arbitration to expedite dispute resolution at lower cost to employees," and that "[u]nder the EDR Program, disputes may be resolved in weeks or months, instead of years in the court system." *See* Armstrong Decl., Ex. A at 2; Opp'n at 9-10. Unlike the manager's oral statement in *Velarde v. Monroe*

Finally, Plaintiff argues that the agreement was not explained to him, but a failure to explain the meaning of arbitration in the case of an employment contract rises only to a modest degree of procedural unconscionability, not moderate or high. *See Nguyen v. Applied Med. Res. Corp.*, 209 Cal. Rptr. 3d 59, 72 (Ct. App. 2016) (finding a modest degree of unconscionability for an arbitration agreement that was offered on a take-it-or-leave-it basis, without the arbitration provider's rules attached, and absent an explanation of what arbitration is). And even under Plaintiff's recitation of the facts, Plaintiff was on some notice as to what he was signing because Graham purportedly told Plaintiff that "[t]his is so you can never sue us.'" Patch Decl. ¶ 18. Although Plaintiff did not graduate from high school nor has legal, human resources, or business experience, "courts have found procedural unconscionability based on specific factors in the employee's education or background, such as where the employee could not speak English, not where they did not have a college degree." *Hicks v. Utiliquest, LLC*, 736 F. Supp. 3d 849, 863 (E.D. Cal. 2024) (collecting cases).

*iii. Surprise*

Surprise occurs "where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle*, 282 P.3d at 1232 (internal quotation omitted).

Here, the Program is clearly labeled the "Employee Dispute Solution Program" and consists of eleven pages, though this includes attachments of a sample dispute resolution form and the applicable arbitration rules and procedures. *See generally* Armstrong Decl., Ex. A. The main text of the arbitration agreement itself spans only four pages and is in approximately 10-point type, with the fifth page including larger, capitalized text reiterating class waiver terms and including an acknowledgment that the employee has received and read the agreement. *See id.* at 2-6. About halfway into the first page, the Program states that it includes "an arbitration agreement which mandates that employment-related legal disputes will be presented to an outside, impartial arbitrator." *Id.* at 2. Unlike the agreement in *OTO*, the text of the Program is not "visually impenetrable," does not "challenge[]

---

*Operations, LLC*, 333 Cal. Rptr. 3d 301, 304 (Ct. App. 2025), however, that an arbitration agreement would "help us resolve any issues without having to pay lawyers," the language in the Program is not "manifestly untrue," but rather describes potential benefits of the arbitration process.

the limits of legibility," nor does it use complex sentences "filled with statutory references and legal jargon" that would make it "nearly impossible to understand the contract's meaning without legal training." 447 P.3d at 691-93. Even the longest paragraph is only nineteen lines long and is broken out into several sentences. *See* Armstrong Decl., Ex. A at 4-5; *cf. Fuentes*, 582 P.3d at 969 ("[T]he arbitration agreement consists of a 'mammoth' paragraph consisting of 'something like 900 words,' with 35 lines squeezed into 'about three vertical inches' of text. One sentence, by itself, is 214 words long." (citation omitted)). Therefore, the text of the Program does not warrant a finding of surprise.

Considering all factors together, however, the Court finds a moderate amount of procedural unconscionability.

### 2. <u>Substantive Unconscionability</u>

"The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided." *Sanchez*, 353 P.3d at 751 (citation modified). "'[T]he paramount consideration in assessing [substantive] unconscionability is mutuality.' An arbitration agreement requires a 'modicum of bilaterality,' meaning the drafter cannot require another to submit to arbitration to pursue a claim but not accept the same limitation when it would act as the plaintiff, 'without at least some reasonable justification for such one-sidedness based on business realities.'" *Hasty v. Am. Auto. Ass'n. etc.*, 317 Cal. Rptr. 3d 295, 312 (Ct. App. 2023) (alterations in original) (citations omitted).

The Court finds at least the following terms to be substantively unconscionable.

#### *i. The Fee-Shifting Provision for Filing in Court*

Attachment B of the Program provides that if an employee "files or causes to be filed in court a petition/complaint alleging a claim or cause of action covered by this Agreement," and does not move to dismiss or stay "within 10 calendar days of notification," and the employer "successfully moves to dismiss or stay the case and refer it to arbitration," then the employer "may submit a request for payment of fees and costs to the Arbitrator, who shall award to the defendant/respondent . . .

the defendant/respondent's reasonable costs and attorney fees incurred because of the filing of the petition/complaint." *See* Armstrong Decl., Ex. A at 9.

In *Ramirez,* the California Supreme Court determined that a materially similar arbitration agreement provision was substantively unconscionable. 551 P.3d at 540. In that case, which involved FEHA claims, the court concluded that permitting attorney's fees under the terms of the agreement would be "inconsistent with *Armendariz*'s directive that a mandatory arbitration agreement cannot require employees to bear any expense that they would not be required to bear if they were able to bring the action in court." *Id*. At 541 (discussing FEHA's asymmetric rule requiring a finding that the action was frivolous, unreasonable, or groundless when brought in order for employers to be awarded attorney fees). Similarly, here, the provision "creates a potential obligation to pay costs only in an arbitral setting." *Id*. The Labor Code provides for fees in employees' favor and only permits an employer to recover fees on a finding of bad faith. *See* Cal. Lab. Code §§ 1194, 218.5(a).

Accordingly, the Court finds that this provision is substantively unconscionable.

*ii. The Post-Award Fee-Shifting Provision*

Attachment B of the Program provides that "[i]f either party brings a post-Award action to enforce or vacate the arbitration award, the prevailing party in any such action shall be entitled to reasonable attorneys' fees and costs to be paid by the losing party as determined by the court." Armstrong Decl., Ex. A at 11.

For the same reasons discussed above, the Court finds that this provision is substantively unconscionable.

*iii. The Discovery Cost Allocation Provision*

Attachment B of the Program limits written discovery to twenty interrogatories and twenty requests for production, "with the requesting party bearing the reasonable cost of compliance with the requests." *Id.* at 10.

"[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz,* 6

P.3d at 687. The Supreme Court has observed that "the presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). At least one court in this district has found that a materially similar clause contributed to the one-sided nature of an arbitration agreement that the court ultimately invalidated. *Lyons v. NBCUniversal Media, LLC*, 2019 WL 6703396, at *11-12 (C.D. Cal. Sept. 27, 2019).

The Program's provision would flip the default rule and place the cost of compliance on the party producing the documents, and the Court finds persuasive the reasoning of the *Lyons* court that this provision contributes to the one-sided nature of the Program.

*iv. The Confidentiality Provision*

The Program requires the parties to "maintain the confidential nature of the existence and content of informal mediation or arbitral proceedings and any rulings or award," provides that any award "shall remain private and shall not be published," and requires that "any action initiated to enforce or challenge the Award shall be filed and maintained under seal." Armstrong Decl., Ex. A at 5, 11.

In *Ramos v. Superior Ct.*, 239 Cal. Rptr. 3d 679, 700-02 (Ct. App. 2018), *as modified* (Nov. 28, 2018), however, the California Court of Appeal held that a provision requiring all aspects of the arbitration be maintained in strict confidence was substantively unconscionable. *See also Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1078 (9th Cir. 2007).

For the same reasons discussed in *Ramos* and *Davis*, at least with respect to any requirement that Plaintiff maintain strict confidence during the arbitral proceedings and forebear interviewing other employees, the Court finds that this provision is substantively unconscionable.

*v. The Modification Provision*

The Program provides that it "may be modified or terminated by the Company upon thirty (30) days' written notice." Armstrong Decl., Ex. A at 5. It also states, "[a]ny modifications or termination shall be prospective only and shall not apply to any claims for which arbitration already has been requested." *Id.*

In *Peleg v. Neiman Marcus Group, Inc.*, however, 140 Cal. Rptr. 3d 38, 42 (Ct. App. 2012), the California Court of Appeal invalidated an arbitration agreement where a modification provision did not exempt "all claims, accrued or known," because the employer could otherwise amend "in anticipation of a specific claim" to make it "more likely the employer would prevail." Defendants appear to argue that the implied covenant of good faith and fair dealing can serve to protect known but unsubmitted claims, and that the Program "provides meaningful protection by preserving the terms for *pending* claims." Reply at 8 (emphasis added). Here, the modification provision has an express limitation, which does not include all known but unsubmitted claims, and when "a modification provision expressly addresses whether contract changes apply to claims that have accrued or are known to the employer, the covenant cannot create implied terms that contradict the express language." *Peleg*, 140 Cal. Rptr. 3d at 68.

Accordingly, the Court finds that this provision is substantively unconscionable.

*vi. The Injunctive Relief Carve-Out*

The Program exempts from arbitration "claims seeking injunctive relief due to unfair competition, due to the use or unauthorized disclosure of trade secrets or confidential information, or due to the breach of non-disclosure or non-competition covenants." Armstrong Decl., Ex. A at 4.

Defendants argue that both parties may bring such claims, but fail to address Plaintiff's argument that such claims are disproportionately brought by employers. *See Ramirez*, 551 P.3d at 533-34; *see Carbajal v. CWPSC, Inc.*, 199 Cal. Rptr. 3d 332, 349 (Ct. App. 2016) ("'[I]t is far more likely' the employer will seek injunctive relief in court to stop an employee from breaching a nondisclosure noncompetition agreement than the employee will seek injunctive relief in aid of his or her claims for wrongful termination, illegal discrimination, or unpaid wages.") (quoting *Trivedi v. Curexo Tech. Corp.*, 116 Cal. Rptr. 3d 804, 811 (Ct. App. 2010)). "The presence of a modicum of bilaterality will not save a clause that is, in practical effect, unjustifiably one sided." *Ramirez*, 551 P.3d at 534 (quoting *Cook v. Univ. of Southern California*, 321 Cal. Rptr. 3d 336, 348 (Ct. App. 2024)).

Accordingly, the Court finds that this provision is substantively unconscionable.

*vii. The Texas Choice-of-Law and Venue Provisions*

The Program applies "the law of the state of Texas, e.g. the Texas Arbitration Act" to "determine the contractual rights and duties of the parties," makes "[a]ny proceeding to vacate the Award . . . subject to Texas state law," and the companion intellectual property and confidentiality agreements send any "Company-initiated claims seeking equitable relief . . . solely and exclusively [to] the state or federal courts located in the Harris County, Texas." Armstrong Decl., Ex. A at 11; Tojarieh Decl. ¶¶ 9-10, Exs. D, E, at 2.

An employer may not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would "[r]equire the employee to adjudicate outside of California a claim arising in California" or "[d]eprive the employee of the substantive protection of California law." Cal. Lab. Code § 925(a). "Adjudication" includes arbitration. *Id.* § 925(d). Defendant does not address Plaintiff's argument that the provisions conflict with section 925(a).

Accordingly, the Court finds that the choice of law provision is substantively unconscionable.

*viii. The Private Attorneys General Act ("PAGA") Waiver*

The Program bars any claim brought "as a private attorney general," "on behalf of the general public, on behalf of other Company employees or on behalf of other persons alleged to be similarly situated," in any forum. Armstrong Decl., Ex. A at 4, 6.

"[A] predispute categorical waiver of the right to bring a [representative] PAGA action is unenforceable," *Adolph v. Uber Technologies, Inc.*, 532 P.3d 682, 688 (Cal. 2023), and thus substantively unconscionable, *Stoker v. Blue Origin, LLC*, 343 Cal. Rptr. 3d 756, 770-71 (Ct. App. 2026). Defendants concede that they do not seek to compel non-individual PAGA claims to arbitration. Reply at 12. Regardless of this concession, however, the Program's PAGA waiver language as phrased is substantively unconscionable.

For all of these reasons, the Court finds that there is a high degree of substantive unconscionability in the Program. Because there is a high degree of substantive unconscionability, and a moderate degree of procedural unconscionability, the Court concludes that the Program is unconscionable.

### 3. <u>Severability</u>

California law provides the following:

> If the court as a matter of law finds [a] contract or any clause of [a] contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code, § 1670.5(a). Section 1670.5 "codifie[s] the principle that a court can refuse to enforce an unconscionable provision in a contract." *Armendariz*, 6 P.3d at 689. Thus, "[i]f a contractual clause is found unconscionable, the court may, in its discretion, choose to do one of the following: (1) refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results. *Ramirez*, 551 P.3d at 544.

"Under California law, the first step of the severance analysis is to assess whether the central purpose of the contract is tainted with illegality." *Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168, 1179 (9th Cir. 2026) (internal quotation omitted). "If not, the court should ask whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary." *Id*. (internal quotation omitted). "Severance is the preferred course if no augmentation is required, but the court should still ask whether severance of the unconscionable terms would function to condone an illegal scheme adopted in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage." *Id*. (internal quotation omitted).

> In *Armendariz*, the [the California Supreme C]ourt found that two factors weighed against severance of the unlawful provisions. First, the arbitration agreement contained more than one unconscionable provision, indicating a "systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." Second, because the arbitration provisions were not mutual, there was "no single provision a court can strike or restrict in order to remove the unconscionable taint

> from the agreement." Instead, the court would have had to augment the contract with additional terms, which it could not do under the statute.

*Stoker*, 343 Cal. Rptr. 3d at 771 (citations omitted); *see Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1100 (9th Cir. 2024). "[N]o bright line rule *requires* a court to refuse enforcement if a contract has more than one unconscionable term. Likewise, a court is not *required* to sever or restrict an unconscionable term if an agreement has only a single such term. Instead, the appropriate inquiry is qualitative and accounts for each factor *Armendariz* identified." *Ramirez*, 551 P.3d at 546. Moreover, "[e]ven if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions." *Id.* at 547. "Finally, if the contract contains a severance clause, the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced." *Id.*

Here, the Court finds that several of the Program's provisions are substantively unconscionable. "Although there are no bright-line numerical rules regarding severance, it is fair to say that the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy." *Id*. Even if the unconscionable provisions could be severed, "enforcing the balance of the contract would [not] be in the interests of justice." *Id*. The Program's defects "indicate that the stronger party [NOV] engaged in a systematic effort to impose arbitration on the weaker party [Plaintiff] not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage." *Id*. Thus, this Court "should refuse to enforce the agreement." *Id.*

This Court "may also consider the deterrent effect" of either severing the unconscionable provisions or refusing to enforce the agreement. *Id.* Citing *Mills v. Facility Solutions Group, Inc.*, 300 Cal. Rptr. 3d 833, 840 (Ct. App. 2022), the court in *Ramirez* explained that "severing multiple unconscionable provisions from an agreement and enforcing the remainder could create an incentive for an employer to draft a one-sided arbitration agreement in the hope employees would not challenge the unlawful provisions." 551 P.3d at 547 (quotation marks omitted). The court further explained that if the employees do challenge the unlawful provisions, a "court would simply modify the agreement to include the bilateral terms the employer should have included in the first place." *Id.* (quotation marks omitted). *Ramirez*'s reasoning is persuasive and supports this Court's determination to refuse to enforce the agreement.

The Court acknowledges that the Program includes a severance clause, *see* Armstrong Decl., Ex. A at 5, but the number and type of unconscionable provisions going to various aspects of the contemplated arbitration, together with the moderate level of procedural unconscionability here, leads the Court to the conclusion that enforcing the Program even without the provisions at issue would not be in the interests of justice.

Accordingly, the Court declines to sever the unlawful clauses.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Compel Arbitration.

**IT IS SO ORDERED.**